IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Civil Action No. 3:18-cv-03106-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Town of Irmo, South Carolina, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    This action arises from an alleged violation of the Fair Housing Act of 1988 ("FHA"), 42 U.S.C. § 3601, *et seq.*, by Defendant Town of Irmo ("Irmo"). (ECF No. 1.) Plaintiff United States of America claims that Irmo "improperly refused to provide a reasonable accommodation or reasonable modification to Patricia Witt, a homeowner who sought a zoning variance to build a carport on her property to accommodate her physical disability." (ECF No. 40 at 1 (citing 42 U.S.C. § 3604(f)(3)(A), (B)).) The matters before the court are Plaintiff's Motion for Partial Summary Judgment as to liability and Irmo's Motion for Summary Judgment.[1] (ECF Nos. 40, 41.) For the reasons stated herein, the court **DENIES** Plaintiff United States of America's Motion for Partial Summary Judgment as to liability (ECF No. 40) and **DENIES** Defendant Town of Irmo, South Carolina's Motion for Summary Judgment (ECF No. 41).

### I. FACTUAL AND PROCEDURAL BACKGROUND

**A. The Carport**

    In 2016, after a slip and fall on her concrete driveway, Ms. Witt decided to build a carport

---

[1] The court observes that Plaintiff "seeks monetary damages for the harms Ms. Witt suffered, a civil penalty to vindicate the public interest, and injunctive relief [pursuant to] 42 U.S.C. § 3614(d)(1), *but does not seek summary judgment on these remedial measures*." (ECF No. 40 at 1 n.1 (emphasis added).)

1

"that would cover a mobility ramp on the stairs outside her home and a portion of her driveway." (ECF No. 40-1 at 3 (citing ECF No. 40-5 at 24–25).)

Ms. Witt hired G&W Enterprises ("G&W"), a licensed construction contractor, to install a patio cover ("carport"). William "Bill" Edward Jones Jr., a G&W sales representative, and Walt Culbreth, the owner of G&W, arrived to survey the job and provide a bid to Ms. Witt. (ECF Nos. 40-5 at 39; 40-7 at 4, 10.) Ms. Witt paid $2,890 in two installments: $1,445 down and $1,445 due upon completion. (ECF No. 47 at 7, 37–38.) The design called for a carport measuring twenty-four (24) feet long and eleven (11) feet wide with three gutter downspouts and seven concrete posts.[2] (ECF No. 40-4 at 17–19.) Five (5) feet of the carport would be attached to the soffit[3] above a plywood ramp that covered two steps between the driveway and the front porch. (ECF No. 40-4 at 18.)

B.  **Zoning Permit Application**

Before construction began, Ms. Witt learned that she had to obtain a construction permit for the carport. (ECF Nos. 40-2 at 107–08; 40-4 at 16–19.) On December 2, 2016, Ms. Witt's request was denied because the carport design would violate Section 7-7.2 of Irmo's Zoning Ordinance. (ECF No. 40-4 at 17 ("Denied – carport would extend in the front of main building").) Section 7-7.2 states that accessory buildings "are permitted in required rear and side yards only, and if located in the buildable area shall not extend or be located in the front of any principal

---

[2] The court notes that the G&W workorder uses the term "cement posts." Cement is "a powder of alumina, silica, lime, iron oxide, and magnesium oxide burned together in a kiln and finely pulverized and used as an *ingredient* of mortar and concrete." *Cement*, The Merriam-Webster Dictionary (11th ed. 2014) (emphasis added). Concrete is "a hard, strong building material made by mixing a cementing material [] and a mineral aggregate [] with sufficient water to cause the cement to set and bind the entire mass." *Concrete*, The Merriam-Webster Dictionary (11th ed. 2014).
[3] A soffit is "the underside part or member of a building (as of an overhang or staircase)." *Soffit*, The Merriam-Webster Dictionary (11th ed. 2014).

building." (ECF Nos. 41-1 at 2; 40-4 at 27.)

### C. Zoning Variance Application

Ms. Witt sought a zoning variance from the Zoning Board of Adjustment ("Zoning Board"), a quasi-judicial body formed by the Irmo Town Council ("the Council"). (ECF Nos. 40-1 at 2; 40-2 at 28; 40-9 at 16.) In her zoning variance application, Ms. Witt explained that she was "handicapped (4 hip surgeries in 1 yr.) [and] need a knee replacement, driveway is slippery when wet. I must use a ramp from driveway to get to my house. Have had several falls on slippery pavement. Use walker and cane" and "[I] want my ramp to be covered and stay dry during rain and snow . . . [the carport] would help with my overall personal safety." (ECF Nos. 40-2 at 160; 40-8 at 1.) On December 12, 2016, the Zoning Board held a hearing to consider Ms. Witt's request; she reiterated her position:

> Mr. Cooley: Okay. Why don't you just give us a little synopsis of what you hope to accomplish tonight?
>
> Ms. Witt: Well, I'd like to get a carport . . . the last eight months [] I caught staph infection and had to go to Charleston and have four surgeries. I've been in a wheelchair for five months. I have a ramp built for me now. And I've had four falls outside, because my ramp is slick[,] and my driveway is slick when the leaves and rain come. And so[,] I called these nice contractors to come over and search and give me a bid. And that's basically my case. I – I feel it's for my well-being.

(ECF No. 40-9 at 4–5.) On December 13, 2016, the Zoning Board denied Ms. Witt's request because the carport, as designed, "does not conform to the Irmo Zoning Ordinance Section 7-7 (Accessory buildings and uses) nor a hardship with the property at 213 Minehead Road." (ECF No. 40-4 at 22.) Ms. Witt subsequently filed a complaint with the United States Department of Housing and Urban Development ("HUD"), which conducted an investigation and referred the matter to the Attorney General for enforcement, and she appealed the Zoning Board's decision in the Richland County Circuit Court, which ultimately dismissed the appeal for failure to prosecute.

3

(ECF Nos. 1 at 6; 40-5 at 78, 195.)

### D. Second Zoning Variance Application

On February 7, 2017, Ms. Witt appeared before the Council to petition for a zoning variance. (ECF No. 40-10 at 4, 6–7.) She claimed that her disability entitled her to a reasonable accommodation or reasonable modification under the FHA. (ECF No. 40-10 at 4, 6–7.) Additionally, Ms. Witt proffered a doctor's note and pictures of injuries she suffered from a fall for the Council to consider. (ECF No. 40-10 at 5–6.). However, at the advice of counsel, the Council refused to discuss Ms. Witt's variance request. (ECF No. 40-10 at 8.)

### E. Procedural History

On November 16, 2018, Plaintiff filed a Complaint alleging that Irmo has: (1) "discriminated . . . because of a disability in violation of 42 U.S.C. § 3604(f)(2); (2) "refused to permit an individual with a disability, at her own expense, to make reasonable modifications to [an] existing premises, when such modifications may be necessary to afford that person full enjoyment of the premises, in violation of 42 U.S.C. § 3604(f)(3)(A)"; (4) "refused to make reasonable accommodations in [Irmo's] rules, policies, practices, or services, when such accommodations may have been necessary to afford an individual with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B)"; and (5) Irmo's "conduct constitutes a discriminatory housing practice, in violation of 42 U.S.C. § 3614(b)." (ECF No. 1 at 6–7.)

On December 17, 2019, Plaintiff filed a Motion for Partial Summary Judgment as to liability (ECF No. 40), and Irmo filed a Motion for Summary Judgment (ECF No. 41). On January 17, 2020, Plaintiff filed a Response to Irmo's Motion and Irmo filed a Response to Plaintiff's Motion. (ECF Nos. 49, 50.) Irmo filed a Reply on January 24, 2020. (ECF No. 51.) On February

4

21, 2020, the court heard oral arguments from the parties regarding the Motions for Summary Judgment (ECF Nos. 40, 41), as well as Plaintiff's Motion to Compel (ECF No. 29). (ECF No. 55.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Summary judgment is not "a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

In evaluating a motion for summary judgment, a district court must not "weigh the evidence and determine the truth of the matter," but must instead "determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citing *Anderson*, 477 U.S. at 249). Accordingly, "[t]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stewart v. MTR Gaming Grp., Inc.*, 581 Fed. App'x. 245, 247 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52). In making such determination, "the district court must view the evidence in the light most favorable to the non-moving party." *Jacobs*, 780 F.3d at 568 (citations

5

omitted).

However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248. While the initial burden of proof falls on the moving party, the burden shifts once a movant proffers evidence to support summary judgment. *Id.* at 323–324. Moreover, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits and sworn affidavits illustrating a genuine issue for trial. *See id*.; *see also Butler v. Drive Auto. Indus. of Am., Inc*., 793 F.3d 404, 408 (4th Cir. 2015). All that is required is "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

#### A. Applicable Law

Congress passed the FHA "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The United States Court of Appeals for the Fourth Circuit has stated that the FHA "makes it unlawful [] to discriminate in the sale or rental of housing or otherwise to make housing unavailable to a buyer or renter because of that buyer's or renter's handicap or the handicap of certain persons associated with the buyer or renter." *Bryant Woods Inn, Inc. v. Howard Cty., Md*., 124 F.3d 597, 602–03 (4th Cir. 1997) (citing 42 U.S.C. §§ 3601, 3604(f)). Under the relevant portions of the FHA, discrimination includes:

> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if

such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted; [or]

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(3)(A), (B). Yet, the Fourth Circuit also recognized that "the FHA does not provide a 'blanket waiver of all facially neutral zoning policies and rules, regardless of the facts,' which would give the disabled 'carte blanche to determine where and how they would live regardless of zoning ordinances to the contrary,'" rather, "[s]eeking to recognize local authorities' ability to regulate land use and without unnecessarily undermining the benign purposes of such neutral regulations, Congress required only that local government make 'reasonable accommodation' to afford persons with handicaps 'equal opportunity to use and enjoy' housing in those communities." *Bryant Woods Inn,* 124 F.3d at 603 (quoting 42 U.S.C. § 3604(f)(3)(B)). Accordingly, the Fourth Circuit has developed a three-pronged test for determining whether a reasonable accommodation is required under the FHA; an accommodation is required if it is "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Id*. Ultimately, the plaintiff bears the burden of proving all three elements by a preponderance of the evidence. *Id.* (citing *Elderhaven, Inc. v. City of Lubbock,* 98 F.3d 175, 178 (5th Cir. 1996)).

### B. The Parties' Arguments

Plaintiff claims that Irmo's denial of Ms. Witt's zoning variance is a violation of the FHA because "[Irmo] is required to allow reasonable accommodations and reasonable modifications for persons with disabilities unless doing so would cause an undue administrative or financial burden."

7

(ECF No. 40-1 at 2.) Plaintiff asserts that summary judgment is warranted in this case because "(1) Ms. Witt has a disability; (2) [Irmo] knew or should have known of her disability; (3) the requested accommodation was necessary; (4) the requested accommodation was reasonable; and (5) [Irmo] refused to make the accommodation." (ECF No. 40-1 at 9–10 (citing *Bryant Woods Inn*, 124 F.3d 597 at 602–04 (4th Cir. 1997); *Evans v. ForKids, Inc.*, 306 F. Supp. 3d 827, 837 n.10 (E.D. Va. 2018)).)

Irmo asserts that it is entitled to summary judgment because: (1) Ms. Witt's proposed accommodation is unreasonable; (2) the carport is not "necessary" as "Plaintiff cannot show that the absence of a carport would have causally prevented Ms. Witt from continuing to occupy her residence"; (3) Ms. Witt has not been denied an equal opportunity under the FHA; and (4) "Plaintiff's claims for injunctive relief . . . [are] now moot." (ECF No. 41-1 at 6, 9, 12–13.)

### C. The Court's Ruling

1. <u>Plaintiff's Motion for Partial Summary Judgment</u>

Plaintiff's Motion includes claims for a "reasonable accommodation violation" and a "reasonable modification violation." (ECF No. 40-1 at 9, 15.) The court notes that the elements for establishing a *prima facie* case of discrimination for a failure to permit a reasonable modification, 42 U.S.C. § 3604(f)(3)(B), are the same as a failure to grant a reasonable accommodation, 42 U.S.C. § 3604(f)(3)(A). Thus, the court need not provide a separate analysis for the reasonable modification theory when the reasonable accommodation theory elements are met.

    *a. Reasonable*

Plaintiff claims that "[t]o be reasonable, the carport needs to provide a benefit to Ms. Witt without unduly burdening [Irmo]." (ECF No. 49 at 6 (citing *Scoggins v. Lee's Crossing*

*Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013) (explaining that the benefits that would accrue to the plaintiff must be weighed against the burden that an accommodation would impose on the defendant when determining reasonableness.)).)

Irmo contends that Ms. Witt sought an unreasonable accommodation, and that she "was not willing to accept less than a 24-foot carport or the placement of the carport in any other location . . she was unwilling to consider alternative approaches . . . [and] she rejected lengthening the driveway or widening the driveway or having the driveway enter the property from the side street[.]" (ECF No. 41-1 at 7.) Remarkably, as Plaintiff correctly points out, Irmo fails to provide any citations to evidence in the record in support of its assertion. (ECF No. 49 at 6.)

To determine whether an accommodation is reasonable, "a court may consider as factors the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations and the benefits that the accommodation would provide to the handicapped." *Bryant Woods Inn*, 124 F.3d at 604. Additionally, "it may also consider whether alternatives exist to accomplish the benefits more efficiently. And in measuring the effects of an accommodation, the court may look not only to its functional and administrative aspects, but also to its costs." *Id.* (emphasis added). However, the accommodation is unreasonable if it imposes "undue financial and administrative burdens" or "changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program." *Bryant Woods Inn*, 124 F.3d at 604 (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410–11 (1979); *Alexander v. Choate*, 469 U.S. 287, 301 n. 20 (1985) (internal quotation marks omitted).

Here, Irmo conceded that the carport did not pose a financial or administrative burden, and that it did not cause a fundamental alteration to the zoning code. (ECF No. 40-2 at 122–126.)

9

Moreover, "[t]he town administrator said that he communicated alternatives to HUD [] but admits he only offered to allow Ms. Witt to build the carport to comply with the zoning code. (ECF No. 40-2 at 128–129.) Therefore, the court concludes that the undisputed facts show that Plaintiff has satisfied this element.

        b. *Necessary*

Plaintiff asserts that "Ms. Witt is substantially impaired in her ability to walk . . . [t]he carport would ameliorate the problems arising from her disability by allowing her to avoid bad weather when walking between her car and her home." (ECF No. 40-1 at 12.) Moreover, "[w]ithout the carport she requested, Ms. Witt will not feel, and very likely will not be, safe in her home." (*Id.*)

Irmo contends that "there is no evidence to substantiate that . . . [and] Plaintiff offered no expert testimony on that point." Furthermore, Irmo claims that "[i]t is [] highly questionable whether the carport as proposed . . . would even have an ameliorative effect because "[t]he carport was designed to be fully open on all sides and thus would still be open to the elements, including rain, snow, ice, and leaves depending on the season." (ECF No. 41-1 at 10.)

An accommodation is "necessary" only if there is a causal connection between the proposed accommodation and the equal opportunity to be afforded the person with a disability. *See Bryant Woods Inn*, 124 F.3d at 604. Stated differently, there must be a showing that the "desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.'" *Id.* (citing *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)).

The court finds that, viewing the facts in the light most favorable to Irmo, there are genuine disputes of material fact regarding the effectiveness of the carport. Irmo casts doubt as to the validity of Plaintiff's claim that "[b]y its very definition, a carport is a shelter that protects vehicles

from the elements . . . . [t]he carport would ameliorate the problems arising from her disability by allowing her to avoid bad weather when walking between her car and her home." (ECF Nos. 40-1 at 12; 49 at 5.) For example, even though Mr. Jones testified that Mr. Culbreth worked with Ms. Witt to propose a design for the carport (ECF No. 40-7 at 10), the workorder lists "Bill Jones" as the architect:

> Q: Tell me what's in your handwriting.
>
> A: The entire first page.
>
> Q: Okay. It lists there under architect Bill Jones. Is that you?
>
> A: Yes.
>
> Q: Okay. Are you an architect?
>
> A: No. That's just the way that [Mr. Culbreth] words his proposals.
>
> . . .
>
> Q: Okay. How about back at the time in 2016, did you have any licenses?
>
> A: I was a salesman for G&W Enterprises, no. All licenses were held by G&W.

(ECF No. 40-7 at 9.) As such, the question of whether a causal connection between the ameliorative effect of the carport as designed and the degree of that benefit is unclear at this stage of litigation. Any further decision by the court with respect the carport's ameliorative effect would be based on speculation.

### c. Equal Opportunity

Plaintiff claims that, "[b]y definition, a reasonable accommodation will provide some benefit to a person with a disability . . . [b]ut the benefit is to accommodate the disability. What the FHA does not require is a benefit that is greater than what is necessary to accommodate the disability." (ECF No. 49 at 10 (citations omitted).)

Irmo contends that "Plaintiff cannot show that the absence of a carport would have causally prevented Ms. Witt from continuing to occupy her residence. In other words, the Plaintiff cannot show a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." (ECF No. 41-1 at 10.)

The "equal opportunity" element directly relates to whether the accommodation is necessary, requiring equal treatment between the disabled and the non-disabled. *See Bryant Woods Inn,* 124 F.3d at 605; *see also Oxford House, Inc. v. City of Raleigh,* 5:98–CV–113–BO, 1999 WL 1940013, at *4 (E.D.N.C. Jan. 1999) ("As the Fourth Circuit has stated, federal fair housing laws require equal opportunities in housing, not a superior advantage.").

The court finds that, because the "equal opportunity" element and the "necessary" element are linked, a causal connection between the ameliorative effect of the carport and the degree of that benefit is unclear at this stage of litigation. As such, any further decision by the court with respect to the "equal opportunity" element would be based on speculation.

Consequently, the court denies Plaintiff's Motion for Partial Summary Judgment (ECF No. 40).

2. Irmo's Motion for Summary Judgment

Irmo's Motion for Summary Judgment generally addresses two claims: (1) the carport is unreasonable because it violates Section 7-7.2 and (2) the effectiveness of the carport as design is "highly questionable." (ECF No. 6–9.) Plaintiff contends that "nowhere in [Irmo's] Motion is there any suggestion that the carport would cause any undue burden or that the carport would fundamentally alter [Irmo's] zoning code. (ECF No. 49 at 5 (citing ECF No. 41-1 at 6–9).)

The court observes that Irmo does not clearly identify or cite to the evidence in the record to support the majority of its assertions. A motion for summary judgment is judged on the basis of

12

the motion papers. *See* Fed. R. Civ. P. 56(c)(1)(A), (B). The court is under no obligation "to comb through the record to find some reason to deny a motion for summary judgment." *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citing Fed. R. Civ. P. 56(c), (e)). However, as the court states above, there is sufficient evidence for a reasonable jury to find in favor of Plaintiff regarding the ameliorative effect of the carport and the degree of benefit it provides to Ms. Witt. The court cannot reach a decision without speculation regarding those elements, and therefore Irmo's Motion for Summary Judgment is denied.

    3. <u>Injunctive Relief</u>

Plaintiff seeks "monetary damages for the harms Ms. Witt suffered, a civil penalty to vindicate the public interest, and injunctive relief to ensure, among other things, that the Town will not violate the FHA against persons with disabilities in the future." (ECF No. 40-1 at 16 (citing *Greenville Cty. Republican Party Exec. Comm. v. Greenville Cty. Election Comm'n*, 604 F. App'x 244, 252 (4th Cir. 2015) (holding that a case is not moot if the court can provide relief)).)

On December 18, 2018, Irmo enacted an ordinance that allows individuals with disabilities to seek reasonable accommodations from land use, zoning and building regulations, policies, practices, and procedures. (ECF No. 40-2 at 85, 89–90.) On October 15, 2019, Ms. Witt applied for an accommodation under the ordinance, which Irmo granted. (ECF No. 40-5 at 104.) Irmo claims that "it has approved [Ms. Witt's] application of a reasonable accommodation . . . [and] that action renders moot the Plaintiff's request for injunctive relief[.]" (ECF No. 41-1 at 15.)

However, the Fourth Circuit has stated that "a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings." *Bryant Woods Inn*, 124 F.3d at 602. There is no dispute that Irmo denied Ms. Witt's accommodation request. (*See* ECF No. 40-4 at 17, 22.) Therefore, the court denies Irmo's claim

that injunctive relief is moot.

## IV. CONCLUSION

For the reasons stated herein, the court **DENIES** Plaintiff United States of America's Motion for Partial Summary Judgment as to liability (ECF No. 40) and **DENIES** Defendant Town of Irmo, South Carolina's Motion for Summary Judgment (ECF No. 41).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 11, 2020
Columbia, South Carolina